First case is United States v. Ayala, No. 17-2422. Good morning, Your Honors. Joseph Drews on behalf of the appellant, Arizeth Ayala, would like to reserve three minutes for rebuttal. That will be granted. Your Honors, in this case, I've raised five individual points for appeal, two of which overlap with the Geraldino case. I'll leave those arguments for that case momentarily. So the three points of error that I want to address for this case is, one, the trial error, two, the Section 104 error, and three, the shackling error. As to the trial error, the district court improperly restricted my cross-examination of the government witnesses as to the reputation in the community for the violence of Bogas and Mawassa. This was improper. Is there anything on the record that suggests that your client was aware of their reputation, and is that necessary? There is in the record. I believe I specifically referenced it in the reply brief where she talked about how she was afraid of them and knew of their propensity for violence. But I think as a general proposition, no. I don't actually believe that that testimony from my client is absolutely necessary. I believe that my client needed to have a subjective belief as to her fear for herself and her loved ones, and that that belief had to be objectively reasonable. The objective reasonable prong of this could be established by other witnesses, in this case, Detective Rashid and the co-defendant, Mr. Miller. So as a result, in the context of this case, I needed to establish through these witnesses. Because as we all know, the government will argue on closing that a criminal defendant has their testimony self-serving, and that the jury can discount the testimony of a criminal defendant. And I take that as a given. That's fair. But in order to get around that, in order to actually prove up the objective reasonableness portion of an arrest offense, it needs to be done through the third party, third individuals. In that case, it was the co-defendant, and it was the detective. And in particular, the detective was very important. Because the detective, their understanding of the reputation in the community, the reputation for violence, I would submit is much more expansive. And I can reasonably argue that while an individual co-defendant has perhaps some problems with his testimony, the detective, there is no problem with the government's witness, the detective. And that, I can argue to the jury, that shows that what the detective says is... Didn't you really get what you were looking for? I mean, I'm looking at some of Miller's testimony, and he says, I did this out of... I was fearful of this person. I mean, didn't you really get what you were looking for? I would say yes and no. It's not a quantitative, but a qualitative difference. When you have a police officer, their testimony is often more forceful, and jurors tend to believe, for better or for worse, tend to believe the police officers. So if I was able to elicit this testimony from the detective, I would submit that it potentially could have changed the outcome. And in no circumstance can the government prove that this error was harmless beyond a reasonable doubt. I would like to focus the court, though, that this was a five-count case. I was able to get the jury to return and not guilty on the fifth count. So I would submit that maybe I wasn't able to get the jury to acquit on the other four counts, but I might have been able to do one, or I might have been able to get one juror to hold out and maybe have a mistrial. If we're going to go down this objectively reasonable road, where do you draw the line? Well, as to the subjective reasonable, the subjective reasonableness has to come from the defendant herself. Whether that subjective belief is objectively reasonable can come from third parties, and often will come from third parties. So, for example, if I testified that I didn't believe I was in fear from an individual, I couldn't claim an arrest offense. But if I claimed that I was in fear, but the individual was a three-year-old child, even if I, for some reason, subjectively believed that I had the fear, no one would say that that's objectively reasonable. So I think that the subjective prong has to come from the defendant. So now turning to my second point, the 104 error. I raised it below, and I believe that none of this court's case law, neither the Hodge case from 2000 nor the Hodge case from 2017 that this panel, or two out of three members of this panel adjudicated a couple years ago, addressed whether, under section 104, a conviction for a local level offense that effectively is paired with a federal offense violates local level law. And I would submit that the Hodge case never mentioned 104 at all. And this case, the Hodge case... Hold on, doesn't the 2000 Hodge case hold that the local case, the local law requires proof of additional element not required by the other? Yes, but that was a Double Jeopardy Blockburger analysis. That was not a section 104. Oh, okay, gotcha. And so as a result, the 2000 Hodge case never mentioned 104, and the V.I. Supreme Court since that time has developed this case law on section 104. So I don't believe that the 2000 Hodge case is controlling. As for the 2017 Hodge case, that is not controlling either, because one, that was on plain error review. This case is not. But doesn't section 104, on some level it may be broader, on others it might be narrower. It has a prepositional phrase, of this code. That is true. But there are two separate crimes. You're talking about a federal crime and a state crime. Why would the federal crime fit under? I'm not saying that the federal count gets balanced. I'm saying the local level count. And the reason is this. One, the V.I. Supreme Court has made clear it's one punishment for the same act. Now, I admit that under the V.I. code, the 104 says, remember, this code only. But when you have to take that and layer it with the Virgin Islands case law from the V.I. Supreme Court, together with the fact that you have one sovereign that allows one punishment and one punishment alone, I would submit it is, in this context, I don't believe this. At best, it is an ambiguous interpretation of the statute, which is why I believe I argued both in motion practice and in the brief that this issue should be certified to the Virgin Islands Supreme Court to determine whether, under local law, a conviction for a local level offense when it's tagged with a federal offense violates Section 104. As a practical matter, in this case, your client was convicted of Hobbs Act robbery, correct? Correct. She was sentenced consistent with the Hobbs Act robbery conviction, correct? Under the guidelines, correct. So what do you want us to do? Well, I would like for this court to certify to the V.I. Supreme Court. If the V.I. Supreme Court says that, under Section 104, the local level robbery cannot stand, then, as a matter of law, under multiplicity law, you don't get into harmless error. As a result, it's got to be remanded, and that count has to be vacated, whether it moves the sentence under the federal sentencing guidelines. But do you dispute the fact that she was convicted of a federal offense? No, not at all. Not at all. She was only convicted of one Virgin Islands offense, right? Correct. The local level robbery, but not the local level 2253 count. But she was sentenced consistent with the Hobbs Act robbery conviction, correct? Well, she was sentenced for all of it, because it's not like a district judge went and— I get it, but if you took the local offense out of it, she would still have been sentenced under the Hobbs Act robbery. Absolutely true. And her guidelines were calculated predicated on a Hobbs Act robbery conviction. That is true, Judge, but I would submit that if I was able to— I'd be able to argue to the district judge on remand that, listen, Judge Gomez, this count was balanced. To the extent that it informed your analysis, to the extent that you determined a particular guideline within the range, or you discounted my argument that she should have gotten a below-guidelines sentence, you're able to resentence anew and look at the case afresh. Maybe it doesn't move the needle, but maybe it does. But I don't think a court on review can make that determination in the first instance. It has to go back to Judge Gomez to make that determination. So now, that's my third point, the shackling issue. And I'd like to bring to this court's attention that I have two writs that are currently pending that have been assigned to this panel. Judge Kaczynski's en banc decision from the Ninth Circuit, I believe, is well-reasoned. It wasn't really a pretrial detainee decision? It was a pretrial detainee decision. In this case, your client had been convicted, correct? That is true. Is that a distinction we should make? I don't believe so, because within the Sanchez-Gomez opinion itself, it was clear that the rationale applied not just to trial before a jury, but applied to pretrial, even applied to sentencing. And it was explicit that that rationale applied to sentencing. It was also clear that was a blanket rule in that district. It was not discretionary with the district judge. That is true. So here, the record seems pretty clear that the judge exercised discretion. I want to go that far, Judge Hartman, because, yes, if you look at the Islay case in isolation, I can understand where the record is not sufficiently well-developed. But when you put it in conjunction with the two cases I have. Well, but we're here on the Islay case. I understand, but I've got the record that I've made the best that I can. And so to that extent, I won't disagree. The record is what the record is. But as far as what Judge Gomez actually did, he did not make any individualized factual determinations as to my client. And also it's not apparent in the record, but I'm sure counsel for the government won't dispute. My client just had a baby. My client is not exactly a menacing individual. I don't believe that anyone could actually put in good faith that my client has any characteristics of dangerousness. So are you looking for a bright-line rule, or should we consider prejudice too? Well, one, I'm looking for a bright-line rule that the determination of dangerousness needs to be made, asked to each defendant, and it can't just be a general, as a matter of course, everyone comes in and they're brought in like a baronet chain, to use a quote from Sanchez Gomez, and that if there isn't a reason, the person has tried to escape before, the person had shanked someone in pre-child detention, no problem. So I think that that needs to be done. And that's at every level? In other words, this is not before a jury, obviously. But you would like a bright-line rule with findings at every level, before a jury, not before a jury, any time? As a practical matter, I think the easy way that could be done is this. If my client or any particular defendant is brought in for a detention hearing, at that time there could have been some type of determination that he or she had some type of history in the past, had a history of escape, something along those lines. The magistrate judge could have made a determination for dangerousness. Do you want a full-blown hearing with findings of fact and conclusions of law about whether the person can be restrained? I wouldn't say that we would have to go that far. I think it could be an initial determination. That's what we had here, right? I mean, the issue was raised, right? Yes. So, you know, the issue was presented to the district judge, and the district judge considered it and disagreed with your position. Is that not a finding? Yes, I would agree that that's a finding. So why isn't the best course to just have this court devolve or continue to allow that power to be reposed in all of our district judges within the circuit in each of their discretion in each individual case? I don't have a problem with that. I think it actually has to be, especially where a defendant raises it, and I would submit that most have not, but where a defendant raises it, and I say, Judge Miller, there's no individualized assessment of my client, defendant John Doe, and then she makes a determination at the end of the matter. If the government doesn't contest it, it might be a 19-year-old kid who's a female who just committed some relatively minor offense, then it might be that, no, there's no reason to have this person shackled during the proceedings, and then that could be the end of the matter. And, of course, if things change while my client's in custody or any particular defendant's in custody, he goes ahead and shanks someone, that can be brought to the attention of the judge, and the judge will be like, well, based upon these new recent events, I find your client is dangerous, and therefore he needs to be shackled. Isn't it true in this case there's at least a reference to a conversation the judge had with the U.S. Marshals? Yes. So they had a conversation, not on the record. Correct. So he then, as I understand, defers to the Marshals' recommendation that she be shackled. Correct. That's not enough? No. So the conversation that he had with the U.S. Marshals should be put on the record explaining why he's making this determination? Yes, because if the conversation was judged, we don't have the manpower, we can't deal with this, as a matter of course, we don't think it's a good idea, that would be a broad-based policy the Marshals' service had, which I believe is impermissible. If it was judged, this person just tried to attack me five minutes ago, this is impermissible, well, that's an entirely different story, and I would submit that would be an entirely appropriate level to hold someone in custody or in the proceedings handcuffed. I don't have a problem with that. But I have to at least be given an opportunity to understand what the Marshals' service said in order to at least make an argument and make a record for this court's review. All right. Thank you, counsel. Thank you. Good morning. May it please the court, my name is Kim Chisholm, and I am representing the United States of America, the aptly, and I would like to ask the court to affirm the judgment of the district court. I don't think that this case has presented any error whatsoever. I listened to what the defense counsel argued here today, and I don't think that anything that he argued would permit this court to overturn the judge's, or the jury's verdict in this case. And I would start, I could start in the same order as counsel, if I could do that? Sure. Okay. So the first thing is the trial error with respect to the cross-examination, with respect to the reputation evidence. One of the things that I wanted to point out to the court is that the defense attorney played for the jury the portion of the audio recording of the defendant's confession to the jury during the trial. I believe that was exhibit number 15, so at his request it was played. And I believe that at that point the defendant did state that she did what she did out of fear for. So then the question becomes whether or not there was error in the courts overruling the objection as to reputation evidence. And what is interesting about this record is that I think that more of the defendants, or at least of, I'm sorry, of the witnesses, or I guess the alleged violent criminals that caused this robbery to occur, Bogus and Mwasa, more of their conduct came out through the cross-examination by the defense attorney. Of all of the witnesses, I think at least something came out. But as I understand Mr. DeRuzzo's argument, he's saying it would have been more powerful had it been from a state witness, government witness. Well, the problem... Isn't that his argument? It might have been if it was the right witness, but if we look at Detective Rashid, and if we look at the cross-examination, she was asked about Bogus by Mr. DeRuzzo. And she was asked, did she learn of him? And that was at 134 of the Joint Appendix. And she said that he was a male and that his first name was Gerard. And it's not spelled the same way that counsel spells it in his written pleading for the reputation evidence to be admitted as a pretrial motion. She indicated that he was in jail. She was sustained as to his reputation for violence in the community, but it's interesting that she also said she didn't know his last name. And that she also testified at 136 that she heard of Mawassa, and that he was a male, but she didn't remember his true name. So I don't know how much she could have added to that particular law enforcement witness, and adding to the knowledge as to their reputation in the community. Whereas we have, and I'll just go, if I might, to Jakeem Emanuel, who was the one who went into the store with the gun, and he was the one who said that he didn't want to be interviewed by the police after they found out that he was the one who had committed the crime, along with the others, because he felt threatened. And that was at Joint Appendix at 306. He felt that his life was in danger, and he said at 306 that Bogus and Mawassa knew where he lives. He said that Bogus and Mawassa were dangerous dudes, and he was afraid of them. They had ways to exercise force or violence. So that was entirely consistent with what the... Well, your friend says that the problem is the police didn't get to testify. How do you respond? Well, I mean, he doesn't have to produce any evidence, but certainly he had the opportunity to cross-examine the witnesses who were proffered by the government, and he did not... I would say that there's no harm or abuse of discretion with respect to it. And if I can just move on to the legal part of this, Judge... Well, yeah. One of the things I'm concerned about is not much of a Rule 403 analysis here. Well, I think that the judge pretty much rules 403, and it's obvious that he has to avoid... Doesn't he have to supply some sort of analysis for us to review under Rule 403? With the abuse of discretion, I don't think it's clearly fanciful or meets the standard whereby this court could question whether or not this was within his discretion, especially as to the reputation evidence, because the main argument that counsel makes in his brief is that reputation evidence is not hearsay, but the reputation evidence has to come in under another rule of evidence. And if you look at the rules of evidence, it doesn't provide for reputation evidence of violence. It provides for reputation evidence of truth or veracity. So clearly, this isn't a denial of the ability to introduce reputation evidence. It's just limiting evidence which the court thought would create perhaps many trials or confuse the jury or be a waste of time or prejudice. So that would be my response, that the argument in the brief doesn't really support what... Or the argument to the district court, as a legal matter, doesn't support what he was trying to do at trial. And the evidence that came out clearly provided his client with what she needed for her duress instruction to be given, and the jury rejected that based on her own testimony, which they've heard. They heard her entire confession, and she testified. So they rejected her defense, and that would be my response to that. So the government's position is that he didn't abuse his discretion for those reasons. What do you make of counsel's double jeopardy argument? I think he's wrong, and the reason I think he's wrong is because I think he's sort of melding different theories. He seems to think that because the government charged a Hobbs Act with a robbery under the local criminal code, the Virgin Islands Code, that somehow that presents double jeopardy. It clearly doesn't. This circuit has already found that, and I think the court noted that in Hodge. But he also fails to recognize that the District Court of the Virgin Islands, under 48 U.S.C. 1612, has concurrent jurisdiction over the robbery third degree. It arose out of the same set of circumstances, and so the district court had the jurisdiction, pursuant to Congress, to try that along with the Hobbs Act robbery. So is there any need for us to certify a question to the Virgin Islands Supreme Court? Not at all, no. And also that Rule 104, the court correctly noted that it deals with Virgin Islands. For instance, counsel says that there was an acquittal on Count 5. I believe it was dismissed on motion of the government, but that might have presented an issue with respect to 104, but not as to the federal counts. There was only one count that she was convicted of. Well, no, she was convicted of the conspiracy. Under Virgin Islands law. Right, that's right, Judge, the robbery first degree. I can move on to the shackling? Before you get there, are you sure the Blockburger test applies in this circumstance? Absolutely, yeah. Isn't this a little different than our 2000 decision, factually, that Hodge decision? I don't think so. It's the same charges. It's the Hobbs Act, and then this is a robbery with a dangerous weapon. It's the same section that's cited. I think it's 1862 of the Virgin Islands Code, Section 14, Title 14, 1862. And so you have, with the Hobbs Act, obviously, it's interference with commerce by intimidation or violence. And then you have the robbery first degree, which is, you know, taking permanently from someone property without their permission, under force and fear, and using a dangerous weapon. So each has an element that the other does not. And here you also have the distinction that the Hobbs Act was directed against some signature jewelry, a jewelry store, as the victim, whereas the robbery, the testimony at trial established, was directed against the store owner's son, who lost his chain from his neck. It was pulled off of his neck. And also the safe was opened, and the money that they were saving for their temple was taken. And I believe one of the perps, when he testified at trial, said that he had used the money for his own personal whim. He said it was like change to him, $1,000. But they had taken that as well, so they took that from them, which is their personal property. So you have the distinction also of having two... A local robbery within the context of the Hobbs Act robbery. Exactly. Okay. Do you want to move on to shackling? Yes. With respect to the shackling, that's also an interesting issue, I think, Judge. The shackling here occurred during the sentencing, and there are two courts of appeals that have squarely said that that's fine. That is the 2nd Circuit and the 11th Circuit. Now, the 3rd Circuit, and I think Judge Hardiman was on the panel, of that case held that in the context of a jury trial, there can be no shackling because there would be the specter of prejudice, and those are the words in that case. And here you don't have that, and that's what the 11th Circuit and the 2nd Circuit case said. So in terms of the legal basis for it being error, it's not there. In terms of the facts, this was brought up by the defense at the very beginning of the sentencing hearing, and he asked that his client be unshackled, and the judge said no. But he also gave the parties an opportunity to brief the issue. He said, if you want to brief this issue and present to the court anything you want to present on this issue, you can do that. As far as I know, that was not done. It was preserved by the defense counsel. So obviously we're going to have to write an opinion on this. Do we need to adopt some sort of a bright-line rule, or do we just leave it at the discretion of the judge depending on the facts and circumstances? You can leave it to the discretion of the judge, and I think that that would be appropriate given that that is the standard of review. The one thing, though, is that the 9th Circuit case is moot. It's vacated as moot, I saw that. And they actually said that it was moot because the case was completed as to the defendants. So arguably, in some sense, when that case went to the 9th Circuit Court of Appeals originally, the 9th Circuit certified it as a class, but it was really four or five defendants just bringing appeals, which was then sort of consolidated into this kind of hybrid type of action. But here you have sort of a similar situation to that because you have a defendant who was shackled during sentencing. It's done, he's been sentenced. The question is, is it now moot for this panel? So if you were writing the opinion, would you establish some sort of protocol or guidelines that judges have to follow in terms of shackling and sentencing, or just a blank record is enough? A blank record is enough because this standard is abuse of discretion, and here, clearly, the district court did not abuse its discretion because he indicated that the marshal had indicated that there were concerns that prompted this to occur. So it's not a blank record. In this case, you had some conversation with the marshal reference. Right. Is the government asking for a rule that says the district court at sentencing can shackle with that explanation? No, I'm just asking the court to affirm this case because this was not a trial situation. This wasn't a case where a defendant was shackled during trial, and precedent doesn't support that there is any specter of precedent. So the case should be affirmed. I understand that, but should we give the district court judges some direction, specific direction when it comes to shackling at sentencing, or just leave it open? Only if you want to join the 11th and 2nd circuits and hold that it's not an abuse of discretion to shackle a defendant during sentencing. But other than that, no. Because I think the only direction is given by the Supreme Court in Deck v. Illinois and the other cases is that when it's a trial situation, then the court has to give some reason for it, but not when it's not a trial situation. Anything more, counsel? No. Okay. Well, thank you. Thank you. May I close by saying that I ask that the judgment be affirmed? Yes. Actually, you have a couple of minutes. If you want to talk about the other two issues, the mic's open. Unless you want to leave it to your colleague for the next appeal. Obviously, it's a common issue in all these cases. It is, it is. If you want to leave it, that's fine. Well, I'll just, if I might, I will just bring it up. My guess is you're probably prepared to argue for that, right? Sort of. Only insofar as I have printed out the recent Third Circuit case, the United States v. Castillo, and I was directly involved in that appeal. And it just, it joins the cases that are cited in the government's brief in holding that the district court has jurisdiction for a number of reasons, which are stated in that opinion, which I can read. But there's no judge that's been chosen or a successor that's been chosen and qualified and seated to replace Judge Gomez. So he sits until that happens. And that's my response to the appointments clause. And this court has previously held that the district court has jurisdiction over cases involving violations of the criminal laws of the United States. And that's, the cases are cited in Castillo. And I would rely on Castillo for the citation for those cases. All righty, thank you. Thank you. Your Honor, as to the trial error, to give a little context, one, Judge Gomez never made any statement on the record as to his 403 analysis. The second is that the detective, I believe, was the first witness called. So to the extent that there could be any argument that this was cumulative or something along those lines, it could be because it was the government's first witness. I would submit that where you have a 403 determination, which is what the district court cited, there needs to be something more. There has to be something. So I can give a response, so I can appropriately tailor my offer of proof, maybe so I can tailor the subsequent testimony or the cross-examination. But as a defense counsel, you've got to give me at least a little bit of something so I can then navigate whatever errors, whatever problems there might be, so that, at a minimum, I'm able to make a better record for this court's review. And I don't think just a naked citation to a 403 is sufficient. Now, as to the Section 104 issue, judges, this was the same course of conduct. This was one event. It was the robbery of the jewelry store. But it's not unusual, is it, Mr. DeRuzzo, that the same course of conduct might result in a multiplicity of crimes? Yes. And as I understood Ms. Chisholm's argument, she said, you know, this jewelry store robbery included a Hobbs Act robbery in violation of federal law and a violation of local law to the extent they grabbed the chain or the $1,000. Yes. Sounds like separate crimes, right? Separate crimes within the same course of conduct. But I don't believe, and, you know, the record is what the record is,  it may have been the evidence or it was the evidence that came out of trial was that. I don't dispute that. But I don't believe it was charged as such. They didn't charge a 104 crime? I mean, they didn't charge the state law crime? No, they did. They did. But I just can't say, because I'm having a senior moment, whether the ‑‑ You're way too young. You know we're all a lot older than you. I thought you would appreciate that. Whether the indictment specifically charged the local level robbery as to the individual and the Hobbs Act as to the business or if it all was, for lack of a better term, you know, in the same soup. But I will point, though, that Blockburger does not apply. Yeah, please address that. She says it does. Why is she wrong on that? Because, let me be specific. If you were looking at a federal to territorial and you were challenging the territorial crime, then Blockburger does not apply because under Section 104 in the Virginia Supreme Court's decision interpreting Albernath, then you look to Section 104. If you were to look from the local level offense and then make the argument that the federal offense is somehow precluded by double jeopardy, then I would submit, then you would look at Blockburger. Because under Section 104 in the Virginia Supreme Court's decisions, that is talking about the local level offense. And I think that's the only way that you reasonably could interpret the confluence of both local level law and federal law because the legislature spoke to local level law, but Congress has not spoken and changed Blockburger for purposes of federal law. So hopefully that then answers your question. But I don't think I can answer to say that Blockburger does not apply as a matter of course, and that Section 104 applies. I think you have to look at specifically analytically the way that one is attacking those specific provisions. Now, as to the ‑‑ You're about done, my friend. I'm sorry. With that, judges, I'd ask the Court to reverse our mat. Thank you very much. Thank you. Before you leave the podium, though, I see you actually are the next lawyer to speak. Yes. Would you rather us take the next case so you can gather yourself? Because we do have another argument today. Honestly, Judge, it doesn't matter because I also have an arraignment upstairs. All right. So we'll take it in the order that we originally put down. But thank you. Thank you, counsel, for your excellent arguments and briefing. We'll take the case under advisory.